IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ESTATE OF S.B., DECEASED
By KAYLA DOERR, Personal Representative,

      Plaintiffs,

vs.                            Civil Action No.

UNITED STATES OF AMERICA,
BRONSON BATTLE CREEK HOSPITAL, Mich. Corp.,
BRIAN KRAUSS M.D.,
LINDSAY WRISTON M.D.,
PAULA COAKES, R.N.,
DENISE ABER-TOWNS R.N.
SARA BRISCOE R.N.

      Jointly and severally

      Defendants,


_____/

GERALD THURSWELL (P21448)
ARDIANA CULAJ (P71553)
THE THURSWELL LAW FIRM P.L.L.C.
Attorney for Plaintiffs
1000 Town Center, Suite 500
Southfield, MI 48075
(248) 354-2222
_____/

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

## **PLAINTIFF'S COMPLAINT AND AFFIDAVITS OF MERITORIOUS CLAIM**

1

NOW COME the above-named Plaintiffs by their attorneys, ARDIANA CULAJ, of THE THURSWELL LAW FIRM, and complaining against the above-named Defendants, their agents, servants and/or employees, either real or ostensible, and say as follows:

## I.

### JURISDICTION, PARTIES AND VENUE

1.  That this is a medical malpractice/wrongful death claim brought in part under the Federal Tort Claims Act for severe and permanent injuries arising out of negligent acts or omissions of employees, agents, apparent agents, servants or representatives of the Defendant United States of America (hereinafter may be referred to as "USA") while acting within the course and scope of their employment, agency, apparent agency, servitude, or representative capacity, under circumstances where the United States of America, if a private person, would be liable to the Plaintiffs under the laws of the State of Michigan where the acts and/or omissions occurred. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §1346 (b).

2.  That at all times relevant and/or material to these matters, the employees, agents, apparent agents, servants or representatives of the United States were subject to the United States' right to control, including substantial supervision and direction over their day-to-day activities.

3.  That the Plaintiff Kayla Doerr, in an individual residing in the County of Kalamazoo, Michigan.

4.  That at all times relevant to this Complaint, the Defendant, United States of America, was the employer of health care providers who administered care and treatment to Plaintiffs' decedent, S.B., at the Bronson Battle Creek Hospital, in Battle Creek, Michigan.

5.  That the United States of America is a Defendant.

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221
(248) 354-2222

6.      That Defendant United States of America may be served with process in accordance with Rule 4(i) of the Federal Rules of Civil Procedure by serving a copy of the Summons and Complaint on Andrew E. Birge., Acting United States Attorney for the Western District of Michigan, 330 Ionia Avenue, N.W., Suite 501, Grand Rapids, Michigan, 49503 to the attention of the Civil Process Clerk and by serving a copy of the Summons and Complaint on Attorney General of the United States of America, by registered or certified mail, to the Attorney General's Office, 10th and Constitution Avenue, N.W., Washington, D.C. 20530, to the attention of the Civil Process Clerk.

7.      That venue is proper in the United States District Court for the Western District of Michigan pursuant to 28 U.S.C. § 1391(a)(1) and (c) as the United States is a Defendant and because all or part of the cause of action accrued in this District and because the Plaintiff resides in this District.

8.      That this medical malpractice/wrongful death claim is also against the following Defendants:  Bronson Battle Creek Hospital, Dr. Brian Krauss, Dr. Lindsay Wriston, Paula Coakes R.N., Denise Aber-Towns R.N. and Sara Briscoe R.N.

9.      That Defendant, Bronson Hospital - Battle Creek, is a Michigan corporation, authorized to do business in the City of Battle Creek, County of Calhoun, and State of Michigan.

10.     That Defendant Dr. Brian Krauss is a resident of Kalamazoo County, Michigan.

11.     That Defendant Dr. Lindsay Wriston is a resident of Kalamazoo County, Michigan.

12.     That Defendant Paula Coakes R.N. is a resident of Kalamazoo County, Michigan.

13.     That Defendant Denise Aber-Towns R.N. is a resident of Ingham County, Michigan.

14.     That Defendant Sarah Briscoe R.N. is a resident of Ingham County, Michigan.

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan  48075-1221
(248) 354-2222

15.   That this Court has supplemental jurisdiction over all claims asserted in this action against each and every Defendant under 28 USC § 1367 as they are so related to the claim asserted against Defendant United States of America that they form part of the same case or controversy.

## II.

## LIABILITY OF THE UNITED STATES OF AMERICA

16.   That this case is commenced and prosecuted against the United States of America pursuant to and in compliance with Title 28 U.S.C. §§2671-2680, commonly referred to as the "Federal Tort Claims Act." Liability of the United States is predicated specifically on Title 28 U.S.C. §§1346(b)(1) an d 2674 because the personal injuries and resulting damages of which complaint is made, were proximately caused by the negligence, wrongful acts or omissions of employees of the United States while acting within the scope of their office or employment, under circumstances where the United States, if a private person, would be liable to the Plaintiffs in the same manner and to the same extent as a private individual under the laws of the State of Michigan.

17.   That the United States Department of Health and Human Services is an agency of the United States of America. The United States of America, Defendant, through its agency, the United States Department of Health and Human Services, at all times material hereto, owned, operated and controlled the health care facility known as Family Health Center at Battle Creek-Women's Health, and though its agency, the United States Department of Health and Human Services, staffed the health care facility with agents, servants, and/or employees.

## III.

## "FTCA" JURISDICTIONAL PREREQUISITES

18.   That on June 27, 2016, the Plaintiffs filed their administrative claims based on the facts alleged herein with the appropriate federal agency – The Department of Health and Human Services – for damages arising out of the wrongful death of S.B, based on the negligence of the United States' employees, agents, apparent agents, servants or representatives,

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan  48075-1221

(248) 354-2222

practicing in the course and scope of their employment with Family Health Center at Battle Creek-Women's Health, Battle Creek Michigan.

19.    That on  November 22, 2016, the United States Department of Health and Human Services denied these claims. Accordingly, Plaintiffs have complied with all jurisdictional prerequisites and conditions precedent to the commencement and the prosecution of this litigation.

## IV.

## <u>FACTS</u>

20.    That the records of **Women's Health – Family Health Center** on the **mother, Kayla Doerr** indicate, "**9/29/2014** @ **9:13 AM** US (Ultrasound) MFM (Maternal Fetal Medicine) FOLLOWUP WITHOUT TRANSVAGINAL / 23w6d Ordering Physician: Gregory O Utter (Maternal Fetal Medicine Physician) Author: Dr. Robert J. Austin (Maternal Fetal Medicine Physician) Uteroplacental Impression: **The placenta is posterior**. The placenta is Grade 0. Normal amniotic fluid is noted. Recommendations: MFM MD visit and US with Doppler's in 4 weeks.

21.    That the records of **Women's Health – Family Health Center** on the **mother, Kayla Doerr** indicate, "**9/29/2014** MFM office visit. Author: Dr. Robert J. Austin (Maternal Fetal Medicine Physician) This ultrasound today is for growth impairment and to assess whether she needs to be followed differently because of her past history. Ultrasound today at 24 - 4/7 gestation, this male baby presents in transverse lie, measuring 23 weeks and 6/7, weighing 652 grams, 36th percentile, 1 pound 7 ounces. Umbilical artery Doppler's are normal for the mid trimester and there has been appropriate interval growth since the last exam. Kayla reports that in prior pregnancies that growth impairment was first suspected at 28 weeks and then it was not until the 32 weeks that absent diastolic flow was confirmed and I believe that I proceed with her cesarean section because of absent flow with abnormal electronic fetal monitoring. With that thinking in mind, we will have her back for follow-up ultrasound, M.D. visit and Doppler's in 4 weeks. Maternal assessment: Blood pressure 129/75, pulse of 87. Temperature 98.1, weight of 159 pounds. Kayla's

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan  48075-1221
(248) 354-2222

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

physical exam is unremarkable. Urine dipstick is negative for protein, glucose and ketones."

22.     That the records of **Defendant Women's Health – Family Health Center** on the **mother, Kayla Doerr** indicate, "**10/27/2014** @ **8:02 AM** US MFM FOLLOWUP WITHOUT TRANSVAGINAL / 27w2d. Ordering Physician: Gregory O Utter (Maternal Fetal Medicine Physician) Author: Dr. Robert J. Austin (Maternal Fetal Medicine Physician) Uteroplacental Impression: The placenta is posterior. The placenta is Grade 0. Normal amniotic fluid is noted. The amniotic fluid index is 14.1 cm. Recommendations: Growth ultrasound locally at 32 weeks with Doppler's. F/U (follow up) MFM prn."

### 11/26/2014 32w 6d Ultrasound

23.     That the records of **Defendant Women's Health – Family Health Center** on the **mother, Kayla Doerr** indicate, "**11/26/2014** 32w6d. Ultrasound Report Management. US performed by: Leigh Ann Collier. Growth: Good. Comments: VTX- posterior placenta, AFI= 24.2 mild polyhydramnios. Normal cord Reviewed by: Jeffrey Custer (OB/GYN, Family Health Center of Battle Creek, partners with Dr. JT Thomas)"

### 12/10/14 LAST PRENATAL VISIT BEFORE DELIVERY OF 12/14/14

24.     That the records of **Defendant Women's Health – Family Health Center** on the **mother, Kayla Doerr** indicate, "**12/10/2014** @ **1:15 PM OB Prenatal Visit. Author: Dr. Thomas K. Thomas (OB/GYN).** 34w6d. Positive screen marijuana **11/10**, Positive screen in **11/29/12.** Reviewed smoking. Reviewed risks in detail, patient offered Rx of Wellbutrin, will consider use to assist quitting. **8/28/2014**: Taking baby ASA (aspirin) daily and monthly visits with MFM. Previous C/S (C-section) x2, both at 32 weeks, HELLP syndrome 1st preg (pregnancy), preeclampsia 2nd preg **Repeat C/s and tubal scheduled 1/8/15.** Serial u/s (ultrasound) at MFM. BP (blood pressure) 119/79. Initial Comments: "No concerns, baby active, L&D (Labor and Delivery) 2 wks ago for leaking fluid, smoker, declines Tdap/utd flu. LSandoval

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan  48075-1221

(248) 354-2222

MA Membrane intact. Signs of preterm labor negative. Reviewed timing of c/s and patient still wants tubal. No s/s (signs and symptoms) of preeclampsia. Has stopped using marijuana. Aware of impact on delivery/need for social work consult. Encouraged patient to get a screen electively while pregnant to show negative use. Ordered AFI (amniotic fluid index) next to check fluid. F/u in 1 week."

## EDD: <u>1/15/15</u> (Due Date).

25.  That the records of **Defendant Women's Health – Family Health Center** on the **mother, Kayla Doerr** indicate, "**<u>12/10/14</u> <u>1:15 PM</u>** OB Prenatal. **EDD: <u>1/15/15</u>** (Due Date).

26.  That the records of **Defendant Women's Health – Family Health Center** on the **mother, Kayla Doerr** indicate, "**<u>12/10/14</u>** Referral to MFM (maternal fetal medicine) for evaluation of increased risk for thrombophilia accompanying recurrent preeclampsia.  Repeat C/S (C-section) and tubal scheduled <u>1/8/15</u>. Mild polyhydramnios.

## Admitted: <u>12/14/14</u>.  OB Triage.
## Dr. Thomas-On Call Supervising Physician

27.  That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "Admitted: <u>12/14/14</u>. Discharge: <u>12/16/14</u>.  **Attending: Donald James Mckeel DO**. Progress Notes: **Patricia R. Zull,** CNM <u>12/14/14</u>. OB Triage Note. Author:  **Zull CNM, Patricia** R. Comments: **Dr. T. Thomas**, **on call supervising physician. Visit Information - "cc" (complaining of)  uterine contractions and vaginal pressure, onset this morning Hx (history) of preeclampsia. Hx of preterm delivery by C-section x 2. Obstetric Exam. Fetal heart tones 130-140**.

28.  That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, " Contractions noted: every 1-2 minutes, lasting 40 seconds, regular pattern, mild in quality. Obstetric Exam: EDD <u>1/15/2015</u>, cervix closed, firm, -2, anterior, uterus consistent with gestational age. Impression and Plan / Diagnosis / Previous cesarean section / Preterm labor / Plan Narrative Description: Terbutaline x 1.

39.   That the records of **Defendant, Bronson Hospital – Battle Creek**, on the mother, **Kayla Doerr**, indicate, "**Patti Zull CNM notified of increase in pain <u>12/14/14</u> <u>1525</u>** Denise Aber-Towns R.N. <u>**12/14/14**</u> **13:32 Patti Zull CNM at bedside** <u>12/14/14</u> <u>16:19</u> **Denise Aber-Towns R.N.**  P387 (FMG)

### Defendant Bronson Battle Creek Hospital's web site.
### Surgical teams are available 24 hours a day, 7 days a week for emergency cesarean section delivery.

46.   That **Defendant Bronson Hospital's web site** indicates, "**Pregnancy and Childbirth at Bronson Battle Creek Hospital. Surgical teams and suites are available on our unit 24 hours a day, 7 days a week for emergency cesarean section delivery**. Our Pregnancy and Childbirth Team. Our team includes experienced physicians, midwives and nurses who specialize in pregnancy and childbirth. Surgeons and in-house anesthesia providers are on-call 24 hours a day, 7 days a week for emergency situations.

47.   That the records of **Defendant, Bronson Hospital – Battle Creek**, on the mother, **Kayla Doerr**, indicate, "<u>**12/16/14- Discharge Summary.**</u> Physicians involved with care. **Attending Physician**: **Thomas MD, Thomas K**- Gynecology, Obstetrics. <u>**Admitting Physician: Thomas MD, Thomas K-**</u> Gynecology, Obstetrics"

### Bronson Hospital – Battle Creek
### <u>12/14/14</u> Dr. Thomas, on call supervising physician

48.   That the records of **Defendant, Bronson Hospital – Battle Creek**, on the mother, **Kayla Doerr**, indicate, "<u>**12/14/14**</u> Progress Notes- OB Triage Note. Author: Zull CNM, Patricia R (Certified Nurse Midwife, Family Health Center of Battle Creek- partners with Dr. JT Thomas) **Supervising Physician Comments: Dr. Thomas, on call supervising physician** Visit information: "cc" uterine contractions and vaginal pressure, onset this morning, Hx (history) of preeclampsia, Hx of preterm delivery by C-

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan  48075-1221

(248) 354-2222

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan  48075-1221

(248) 354-2222

section x2 Obstetric Exam: Fetal heart tones 130-140, contractions noted: every 1-2 minutes, lasting 40 seconds, regular pattern, mild in quality. EDD <u>1/15/2015</u>, cervix closed, firm, -2, anterior, uterus consistent with gestational age. **Plan**: Terbutaline x1, IV hydration, CBC, CMP, UA (pg. 13-15)

## Monitor on at <u>1209</u>

49.    That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "<u>12/14/2014</u> (patient placed on monitor at <u>12:09</u>) LD Flow Record FHR Assessment Monitor Mode: external Baseline Range: 135 BPM. Variability: Moderate. Accelerations: Accels (accelerations) Absent. Decelerations: no decelerations noted. **MD Reviewed Fetal Monitor Strip: Patti Zull CNM**. Contraction Assessment Monitor Mode: external. Frequency: 1. Duration: 40-60. **Denise Aber-Towns, R.N**.

## <u>1215</u> Physician Notification: provider called cell phone to voicemail all other alternate numbers not answered.

50.    That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**<u>1215</u> Dr. Notified: Patti Zull CNM notified of. Physician Notification: provider called other @ cell phone to voicemail all other alternate numbers not answered.  Denise Aber-Towns, R.N**.

## UC (uterine contractions) Strong, Uterus Non-relaxed.

51.    That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "<u>12/14/14</u> <u>12:20</u> (3) Note(s) > External, 13S BPM, Moderate, Access Absent, no decelerations rioted, **Patti Zull CNM,** External, Contraction Frequency: 1, UC Moderate, **UC (uterine contractions) Strong**, **Uterus Non relaxed**,   Contraction Duration: 40-FA),   Comments abd. palpated per **Patti Zull CNM** <u>12/14/14</u> <u>18:56</u> - **Denise Aber Towns R.N.** > Misc Annotations: Providers door knocked on and answered. <u>12/14/14</u> <u>18:39</u> • Paula Coakes, RN  **Patti Zull CNN notified of. Other @ notified that patient in triage and need to come to triage now**. <u>12/14/14</u> Paula Coakes, RN 3) <u>12/14/14</u> <u>12:22</u> (1) Note(s)

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

> SVE, No Vag Bleeding, Vertex, closed.   Misc Annotation per Patti Zull CNM **12/14/14** **12:25** - Denise Aber-Towns R.N.

## **1222** Cervix Closed

52.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1222** Fetal presentation: vertex. Vaginal Bleeding: No vag bleeding. Cervical Dilation: closed. Vaginal Procedures: SVE.  **Denise Aber- Towns, R.N**.

## **1226** Maternal Pulse 108 bpm

53.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1226** BP: 102/92. Pulse BPM: 108. Respiratory Rate: 22. Temperature Degrees F: 98.1. **Denise Aber-Towns, R.N**.

## **1230** IV bolus started

54.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1230** IV: IV Started; IV bolus started; labs drawn with IV start.  **Paula Coakes, R.N.**

## **12:32** NST Non-Reactive

55.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**12/14/14** **12:32** [2] Note(s) > **NST (Non-Stress Test) Performed, NST Non-Reactive 12/15/14 07:22** - Paula Coakes, RN  4) **12/24/14** **12:34** (4) Note(s) Misc Annotations: maternal movement **12/14/14** **18:51** - Denise Aber-Towns RN  Sp02 100% "

56.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1237** BP: 131/83. Pulse BPM: 95.

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

57.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1244** FHR Assessment. Monitor Mode: external. Baseline Range: 135 BPM. Variability: Moderate. Accelerations: Accels absent. Decelerations: no decelerations noted. Contraction Assessment: Monitor Mode: Palpation; external Frequency: 1-2. Duration: 40-60. IV/MEDS. Tocolytics/HTN: Terbutaline 0.25 mg subcut. **Denise Aber-Towns, R.N**.

58.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1300** FHR Assessment. Monitor Mode: external. Baseline Range: 145 BPM Variability: Moderate Accelerations: Accels absent. Decelerations: No decelerations noted. Contractions Assessment: Monitor Mode: Palpation; external. Frequency: 2-4. Duration: 50-70. **Denise Aber-Towns, R.N.** (pg. 224).

59.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1317** Pain location: back. Pain type: pressure; dull. Pain comments: states abd. pain is better rating pain a 4-5. **Denise Aber-Towns, R.N**.

## Tracing maternal pulse at <u>1319</u>

60.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1319** Misc Annotations: Sitting high fowlers C/O back pain tracing maternal pulse. Warm blanket to back for comfort.  **Denise Aber-Towns, R.N**."

61.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**12/14/14 12:15  Patti Zull CNM notified of, provider called, Other@ cell phone to voice mail/ all other alternate numbers not answered 12/14/14 12:54** - Denise Aber-Towns R.N.

## <u>1328</u> fetal heart rate 135

11

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

62. That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**12/14/14 13:28** > External, 135 BPM, Moderate, Accels (accelerations) Absent, no decelerations noted, Palpation, External, Contraction frequency: 2-5, UC Mild, UC Moderate, Uterus Relaxed, Contraction Duration: 40-60, Comments: uterine irritability noted **12/14/14 19:00** - **Denise Aber Towns R.N.**  Misc Annotations: states pain is back and it is worse **12/14/14** 15:24 - **Denise Aber-Towns R.N.** 2) **12/14/14 13:29**."

63. That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "Duration: 40-50.   **Denise Aber-Towns, R.N.**

### States pain is back and worse.

64. That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "Contraction Strength: UC (uterine contractions) Mild, UC Moderate. Resting Tone between CTX's: Uterus relaxed. States pain is back and it is worse.

65. That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1331 Patti Zull (CNM)** notified of increase in pain.  **Denise Aber-Towns, R.N.**

66. That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1332 Patti Zull (CNM)** at bedside. **Denise Aber-Towns, R.N.**

### 1333 Oxygen and IV Bolus

67. That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1333** Intervention other: **Oxygen 10L NRB, IV Bolus.** Vaginal Bleeding: No vag (vaginal) bleeding. Cervical dilation: closed**.** Vaginal procedures: SVE (sterile vaginal exam)**. Denise Aber-Towns, R.N**.

### 1335 hand held fetal heart rate 80

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

68.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1335** Comments: being hand held. FHR (fetal heart rate) audible at 80. **Denise Aber-Towns, R.N.**

### 1343 Zull CNM notified, called Dr. Thomas to update patient's condition.

69.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1343** Dr. notified: **Patti Zull CNM** notified of. Dr. Notified of assessment: Comments @ called Dr. Thomas cell phone to update on patient condition. **Paula Coakes, R.N**.

### 1344 Zull CNM at bedside. Audible 90's fetal heart tones.

70.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1344** CNM @ remains at bedside **Patti Zull CNM**; nurse remains at bedside, audible 90's FHT (fetal heart tones) **Paula Coakes, R.N.: Denise Aber-Towns, R.N.**

### 1345 Patient's uterus is not relaxing in between contractions. RED FLAG for abruption! Maternal pulse 119

71.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1345** BP: 137/82. Pulse: 119. Resting tone between CTX's (contractions); Uterus non relaxed. **Denise Aber-Towns, R.N.**

### 1348 Patti Zull (CNM) called Dr. Thomas cell phone

72.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1348** Patti Zull (CNM) called Dr. Thomas cell phone. **Paula Coakes, R.N**.

### 1349 Maternal pulse 124.

73.   That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1349** Pulse: 124.  This field is left blank

## **1350** Zull CNM texted Dr. Thomas cell phone

74.   That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1350** Patti Zull CNM texted Dr. Thomas cell phone.  Paula Coakes, R.N.

## **1351** Zull CNM called Dr. Thomas cell phone

75.   That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1351** Patti **Zull CNM called Dr. Thomas cell phone.  Paula Coakes, R.N.**

## **1352** Zull CNM called Dr. Krauss and informed of client needing a provider to the unit. FHR monitor being hand held.

76.   That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1352** FHR monitor being handheld. **Dr. Notified: Brian Krauss MD notified of. Dr. Notified of assessment: comment @ Patti Zull CNM called Dr. Krauss and informed of client needing a provider to the unit.  Paula Coakes R.N.; Denise Aber-Towns, R.N.**

## **1353** Dr. Thomas informed, will be in to do C-section.

77.   That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1353** Dr. Notified: **Thomas Thomas M.D. Physician notification: provider called. Dr. Notified of assessment: Comment @ informed that will be in to do cesarean and spoke with Sara Briscoe RN.  Paula Coakes, R.N.** (pg. 240-241)

## **1355** Dr. Thomas states he is on his way.

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

78.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1355** Physician Notification: Other @ **Patti Zull CNM call Dr. Thomas**. He states he is on his way.  **Paula Coakes, R.N.**

### **1357** called Dr. Okwereogu, needs him up stat to birth place for C-section.

79.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1357** Emergent FHR Interventions: Provider called @ Dr. Okwereogu called and states need him up to birthplace stat for cesarean section.  **Paula Coakes, R.N.**"

80.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate: **Call Dr. Wriston 1358.  CNM @ 1331. Call Dr. Thomas @ 1343, 1348, 1351, 1352.  Text Dr. Thomas @ 1350. Call Dr. Krauss 1352. Dr. Thomas called 1353.  From 1331 – 1400 concerns for fetal wellbeing.  FHR 90-107. O2 mask, Foley. Birth @ 14:24.**"

### **1359** to Operating Room.

81.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1359** To OR (operating room).  **Denise Aber-Towns, R.N.**

### **Dr. Thomas to come to hospital STAT, states he is on his way in.**

82.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**Thomas M.D. to come to hospital STAT, states he is on his way in. 12/14/14 14:01 Sara Briscoe, R.N. 12/14/14 14:03** FM (fetal monitor)"

83.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "ELECTRONICALLY SIGNED BY: Zull CNM, Patricia R (12/14/2014 18:39)** Brief Note Age: 23 years. **Author:  Zull CNM, Patricia R.  Dr. T. Thomas, on call supervising physician. Comments: Phone call @1331 by RN requesting evaluation**

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

of pt (patient) status. Pt reported of severe pain right hip and increased rectal pressure. SVE (sterile vaginal exam) @ <u>1333</u>, cervix closed, firm, -3, no fluid or blood noted. FHR (fetal heart rate) 90-107. 02 per mask, Foley placed. Charge (nurse) notified of pt (patient) status. It was my understanding that Dr. Thomas was notified by L & D staff. No report of response from Dr. Thomas was appreciated over the next several minutes. Calls to Dr. Thomas's cell phone were made @ <u>1343</u>, <u>1348</u>, <u>1351</u> messages were left to call labor and delivery from CNM's (Zull) personal cell phone. Text was made at <u>1350</u> for Dr. Thomas to call Labor & Delivery Stat. Ruth Hope was contacted by phone in an attempt to obtain alternate number to reach Dr. Thomas @ <u>1352</u>. Ruth was unable to reach him by phone, message left. Dr. Wriston was call by RN Sarah on unit @ <u>1355</u> and <u>1358</u>, no response. Dr. Krauss responded to phone call and agreed to come to labor and delivery @ <u>1352</u>. Reports from nursing staff that Dr. Thomas called and was on his way. Dr. Krauss was notified that Dr. Thomas was enroute to hospital@ <u>1353</u>.FHT's 80-90's. OR was opened. Anesthesia was notified @ <u>1357</u>. Pt taken to OR (Operating Room) leaving triage @ <u>1400</u>. Pt was moved from the stretcher and put on OR table. Pt reports that fluid was leaking from her vagina, bright red blood was noted. Care turned over to Dr. Thomas, see operating room report. DOCUMENT NAME: Progress Notes. ELECTRONICALLY SIGNED BY: Thomas MD, Thomas K (<u>12/14/2014</u> <u>17:53</u>) PROGRESS NOTES: Patient evaluated secondary to nurse reporting bleeding."

## <u>1421</u> Dr. Thomas in Operating Room.

84.    That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "<u>1421</u> Dr. Thomas in OR.  **Paula Coakes, R.N.**"

**Mother ready for delivery at <u>1402</u>, but waiting for Dr. Thomas to arrive.**

**Dr. Krauss had been called and said he would see mother at <u>1352</u>.**

**Birth @ <u>1424</u>.**

16

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

85.    That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1402** Kayla Doerr mother entered the Operating Room.  **1402** general anesthesia given. **1422** C-section started. **1424** birth.  **Kayla Doerr mother ready for delivery at 1402, but waiting for doctor to arrive.  Dr. Krauss had been called and said he will see mother at 1352**."

**Mother Enter Operating Room: 1402.**
**Anesthesia start: 1402.**
**Operation start: 1422.  (20 minutes later)**
**Birth: 1424.**

86.    That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**Stat Cesarean Section. Patient Enter: 1402.  Anesthesia start: 1402.  Operation: 1422.  Birth: 1424. Physician: Dr. Thomas Thomas. Anesthesia: Dr. Alphonsus Okwereoju, CRNA Bradley Wilson. Scrub Nurses: Traci Tolmacs, Patty Zull, CNM, Amy Stanton, RN.  Circulator Nurse: Denise Aber-Thomas, RN.  Observers: Nurse Paula Coakes, RN.  Pre-operative Diagnosis:  Abruption at 35 weeks' gestation with loss of fetal heart tones. Operation: Repeat cesarean section. Post-operative Diagnosis: Fetal demise. PROM (premature rupture of membranes), large abruption. Signed: Nurse Denise Aber-Towns.  12/14/14 @ 1545**.

**1424 Birth**

87.    That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**1424** Delivery of baby.  **Paula Coakes, R.N.**

**Birth Weight: 5lb 7oz.**

88.    That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "Birth Weight: 5lb 7oz."

89.   That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "Hematology **12/14/2014** @ **1236** Hbg-11.4 (norm 11.5-15.5). **12/14/2014** @ **1653** Hbg- 8.6.  **12/15/2014** @ **0644** Hbg- 6.2

### Apgar scores 0 / 0 / 0.
### Fetal heart tones at 60 per Patti Zull, CNM.

90.   That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "Labor and Delivery Summary. EDC: **1/15/15**. Admitted to Hospital: **12/14/14** @ **1202**. Membranes ruptured @ **1424**.  Onset of labor: **12/14/14** @ **1050**. Delivery / Birth: **12/14/14** @ **1424**. **Apgar scores** 0 / 0 / 0.  Remarks: **fetal heart tones per Patti Zull, CNM at 60.**  Signed:  Nurse Denise Aber-Towns, RN.  **12/14/14**.

### Cord Blood Gases: pH arterial cord 6.76

91.   That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**12/14/2014** @ **1430** Cord Blood Gas pH arterial cord- 6.76** (norm 7.21-7.31) pCO2 arterial cord- 93 (norm 33-49). pO2 arterial cord- 11 (norm 9-19) Base excess arterial cord: -20.1 (norm -2.5-9.7). **Cord Blood gas venous cord- pH 6.89 (norm 7.17-7.48)**. pCO2 venous cord- 25 (norm 26-59). pO2 venous cord- 31 (norm 28-32). Base excess venous cord: -25.7 (norm -1.0- 8.9)"

92.   That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**12/14/2014** 35-3/7 male born per C-section C̄ (c with line over it, meaning "with") Dr. Thomas for abruption at **1424**. Taken right over to warmer. No heart rate noted. Neopuff at 30% started after mouth and nares suctioned. Chest compressions began at same time and copious amounts of fluid expelled from mouth and nares (c with line over it, meaning "with") compressions at **1425**. **1426** no air exchange auscultated. Janet RT doing neopuff. **Dr. Moazami (pediatrician)** intubating. **1427** UVC inserted by **Cheryl RN** and at **1428** Epinephrine 0.4 milliliters given in UVC. Also at **1427** O2 turned to 100%. Neopuff pressure remains at 20 to 23 cm/h2o. 1429 UVC flush (c with line over it, meaning "with") 1 ml saline. **1430** Dr. Moazami

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221
(248) 354-2222

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

intubated. Air exchange auscultated. Chest compressions & neopuff continue. **1431** 0.4 ml of epinephrine given and 1ml flush **through** UVC. **1434** still no heart rate. 0.4 ml epinephrine given (c with line over it, meaning "with") 1 ml flush. **1436 still no heart rate auscultated. Dr. Moazami called code to discontinue.**"

93. That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**12/14/2014 @ 1839. Progress Note: Author: Zull CNM, Patricia R (Certified Nurse Midwife, Family Health Center of Battle Creek- partners with Dr. T Thomas) Phone call @ 1331 by RN requesting evaluation of pt status. Pt reported of severe pain right hip and increased rectal pressure. SVE @ 1333, cervix closed, firm, -3, no fluid or blood noted. FHR 90-107. O2 per mask, Foley placed. Charge notified of pt status. It was my understanding that Dr. Thomas was notified by L & D staff. No report of response from Dr. Thomas was appreciated over the next several minutes. Calls to Dr. Thomas's cell phone were made @ 1343, 1348, 1351 messages were left to call labor and delivery from CNM's personal cell phone. Text was made at 1350 for Dr. Thomas to call L & D Stat. Ruth Hope was contacted by phone in an attempt to obtain alternate number to reach Dr. Thomas @ 1352. Ruth was unable to reach him by phone, message left. Dr. Wriston was call by RN Sarah on unit @ 1355 and 1358, no response. Dr. Krauss responded to phone call and agreed to come to labor and delivery @ 1352. Reports from nursing staff that Dr. Thomas called and was on his way. Dr. Krauss was notified that Dr. Thomas was en-route to hospital @ 1353. FHT's 80-90's. OR was opened. Anesthesia was notified @ 1357. Pt taken to OR leaving triage at 1400. Pt was moved from the stretcher and put on OR table. Pt reports that fluid was leaking from her vagina, bright red blood was noted. Care turned over to Dr. Thomas, see operating room report**."

**Presents to labor and delivery for abdominal pain and tightness of her belly. Tachysystole and cramping.**
**Fetal heart tones went from the normal range to the 60s.**
**In Operating Room awaiting Dr. Thomas' arrival.**

94. That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "ELECTRONICALLY SIGNED BY:

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

**Thomas MD, Thomas K** (<u>12/17/2014</u> <u>09:14</u>) Operative Note /
DATE OF SERVICE: <u>12/14/2014</u> **AUTHOR: Thomas K Thomas MD
PREOPERATIVE DIAGNOSES:- Suspected placental abruption at
35 and 3/7weeks.- Absent fetal heart tones while observation in labor
and delivery**. POSTOPERATIVE DIAGNOSES **Intrauterine fetal
demise. Massive abruption**. PROCEDURE:   Emergency repeat 3rd
cesarean section. ANESTHESIA:   General. **SURGEON:   Thomas
Thomas, M.D.**= **ASSISTANT: clinical nurse midwife (Patricia Zull)
replaced by Amy Stanton, L&D nurse. ESTIMATED BLOOD LOSS:
500   mL of frank bleeding during the case. Abruption totaling clots
approximately 500 mL**. SPECIMENS: Cord gas. Cord blood. Placenta to
pathology.  **INDICATIONS**:   The patient is a 23-year-old G3, P2 at 35-
3/7 weeks who presents to labor and delivery for abdominal pain and
tightness of her belly, please see the triage note for full details.  **During
observation**, she **was noted to be having tachysystole and cramping**
and she was observed and given IV hydration and she was then **noted to
have return and worsening of pain and contractions and fetal heart
tones went from the normal range to the 60s.   I was contacted about
the acuity of the circumstances and presented to labor and delivery
force emergent C-section.   Due to the urgent nature of the procedure,
I did not personally consent the patient for the procedure.**
DESCRIPTION OF PROCEDURE:   The patient was taken back to the
operating suite to await my arrival.   She was prepped and draped for
surgery in a sterile fashion and a Foley catheter was placed.   **Upon
arriving to the operating suite, the patient was then intubated and
placed under general anesthesia by member of anesthesiology
department.   The last heart tones were heard were in the 60s several
minutes before I entered the operating room.   We began the surgery
as soon as anesthesia was effective.   … The baby was delivered
without difficulty.   The baby showed no crying, no movement and
was poor tone and color.   The cord was cut and baby was handed off
to waiting pediatrics team, which included Dr.  Moazami due to the
grave nature of the situation.   Of note, in delivering the placenta,
there was noted to be a large abruption that had clots along
approximately two-thirds of the interface with the uterus.   The
placenta was sent to pathology.  The baby was pronounced dead by
Dr.  Moazami.**   After several efforts to resuscitate the baby including
epinephrine intervention, there was noted to be no pulse and no
respiratory effort.  The cause of death appears to be massive abruption in
rapid sequence.  D: <u>12/14/2014</u> <u>20:36</u> Thomas K Thomas, MD."

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

## Pathology Final
### The findings would be entirely consistent with abruption with hemorrhage.

95.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**12/15/2014 14:33** (Pathology Final) The findings would be **entirely consistent with abruption with hemorrhage**. Clinical correlation is required."

### Dr. Thomas called, cell phone to voice mail.
### All other alternate numbers not answered.

96.     That the records of **Defendant, Bronson Hospital – Battle Creek**, on the **mother, Kayla Doerr**, indicate, "**12/16/2014 @ 17:57** Social Work Note / Author: Barbara E. O'Neil. **Pt. stated that she has been emotional as she did not expect demise. She was tearful. She reported current depression and stated that Buspar had been helping with anxiety. Pt states that she is not suicidal. Stated that her mother-in-law is removing the baby items from home prior to pt (patient) getting home.** Pt reported some situational depression over the past few years. She is not currently interested in counseling. Reported that she was moody during this pregnancy and was emotional due to hormones. She is aware of signs/symptoms of PPD (post-partum depression)."

### V.

## CLAIM FOR NEGLIGENCE OF DEFENDANT UNITED STATES OF AMERICA

97.     That Defendant, the United States of America, by and through its agents, apparent agents, employees, servants, representatives, and contractors, undertook duties to provide proper care to Plaintiff's decedent, S.B., with the level of care, skill, and treatment that is recognized as acceptable and appropriate by reasonably prudent health care providers.

98.     That at all times material herein, a patient-health professional relationship existed between Plaintiff mother and/or Plaintiff's decedent and **Dr. Thomas K. Thomas, OB/GYN.**

99.     That at all times material herein, a patient-health professional relationship existed between Plaintiff's decedent and **Patricia Zull, Certified Nurse Midwife.**

100.    That at all times material herein, there was a patient-health professional relationship between health care professionals and Plaintiffs who cared for Plaintiffs at Bronson Battle Creek Hospital which health care professionals were the agents, servants or employees of Defendant USA, either real or ostensible.

101.    That at all times material herein, Defendant USA'S employee and/or agent, **Dr. Thomas K. Thomas**, was a doctor duly licensed to practice medicine in the State of Michigan.

102.    That at all times material herein, Defendant USA'S employee and/or agent, **Patricia Zull CNM**, was a certified nurse midwife licensed in the State of Michigan.

103.    That **Dr. Thomas K. Thomas**, was the agent, servant or employee of Defendant United State of America, either real or ostensible, and was acting in the course and scope of said employment when said doctor violated the standard of practice of his profession in the care and treatment of Plaintiffs as stated herein.

104.    That **Patricia Zull CNM**, was the agent, servant or employee of Defendant United State of America, either real or ostensible, and was acting in the course and scope of said employment when said certified nurse midwife violated the standard of practice of her profession in the care and treatment of Plaintiffs as stated herein.

105.    That **Family Health Center at Battle Creek-Women's Health** is liable to Plaintiffs herein under the doctrine of respondeat superior, either real or ostensible, for the malpractice of **Dr. Thomas and CNM Zull** as alleged herein.

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221
(248) 354-2222

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

106. That **Family Health Center at Battle Creek-Women's Health** is a federally funded healthcare facility owned, operated and controlled by the United States of America through its agency, U.S. Department of Health and Human Services.

107. That at all times material hereto, **Dr. Thomas K. Thomas and CNM Zull,** when rendering health care services to Plaintiffs herein, was the agent, servant and/or employee of the U.S. Department of Health and Human Services, or some other agency thereof, and was at all times material hereto, acting within the course and scope of such employment.

108. That at all times material herein, a patient-doctor relationship existed between Plaintiff mother and/or Plaintiff's decedent and **Defendant Dr. Brian Krauss.**

109. That at all times material herein, a patient-doctor relationship existed between Plaintiff mother and/or Plaintiff's decedent and **Defendant Dr. Lindsay Wriston.**

110. That at all times material herein, a patient-nurse relationship existed between Plaintiff mother and/or Plaintiff's decedent and **Defendant Paula Coakes R.N.**

111. That at all times material herein, a patient-nurse relationship existed between Plaintiffs and **Defendant Denise Aber-Towns, RN**.

112. That at all times material herein, a patient-nurse relationship existed between Plaintiffs and **Defendant Sara Briscoe, RN.**

113. That at all times material herein, there was a patient-doctor relationship between doctors and nurses who cared for Plaintiff mother and/or Plaintiff's decedent at Defendant Bronson Battle Creek Hospital which doctors and nurses were the agents, servants or employees of Defendant Hospital, and/or Defendant Family Health Center of Battle Creek- Women's Health, either real or ostensible.

114. That at all times material herein, **Defendant, Dr. Brian Krauss**, was a physician duly licensed to practice medicine in the State of Michigan.

115. That at all times material herein, **Defendant, Dr. Lindsay Wriston** was a physician duly licensed to practice medicine in the State of Michigan.

116. That when Plaintiff mother and/or Plaintiff's decedent were admitted to Defendant Bronson Battle Creek Hospital, Plaintiff mother and/or Plaintiff's decedent were admitted as <u>staff patients</u> and a doctor or doctors or nurses were assigned pursuant to hospital procedures, by Defendant Bronson Battle Hospital to care for Plaintiff mother and/or Plaintiff's decedent and said doctors and nurses were the agents, servants and/or employees of said Defendant Bronson Battle Creek Hospital, either real or ostensible.

117. That **Defendant Dr. Brian Krauss** was the agent, servant or employee of Defendant Bronson Battle Creek Hospital, either real or ostensible, and was acting in the course and scope of said employment when said doctor treated Plaintiff mother and/or Plaintiff's decedent and violated the standard of practice of her profession in the care and treatment of Plaintiff mother and/or Plaintiff's decedent as stated herein.

118. That **Defendant Dr. Lindsay Wriston** was the agent, servant or employee of Defendant Bronson Battle Creek Hospital, either real or ostensible, and was acting in the course and scope of said employment when said doctor treated Plaintiff mother and/or Plaintiff's decedent and violated the standard of practice of her profession in the care and treatment of Plaintiff mother and/or Plaintiff's decedent as stated herein.

119. That **Defendant Paula Coakes RN,** was the agent, servant or employee of Defendant Bronson Battle Creek Hospital, either real or ostensible, and was acting in the course and scope of said employment when said RN treated Plaintiff mother and/or Plaintiff's decedent and violated the standard of practice of her profession in the care and treatment of Plaintiff mother and/or Plaintiff's decedent as stated herein.

120. That **Defendant Denise Aber-Towns, RN**, was the agent, servant or employee of Defendant Bronson Battle Creek Hospital, either real or ostensible, and was acting in the course and scope of said employment when said RN treated Plaintiff mother and/or Plaintiff's decedent and violated the standard of practice of her profession in the care and treatment of Plaintiff mother and/or Plaintiff's decedent as stated herein.

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

121. That **Defendant Sarah Briscoe, RN**, was the agent, servant or employee of Defendant Bronson Battle Creek Hospital, either real or ostensible, and was acting in the course and scope of said employment when said RN treated Plaintiff mother and/or Plaintiff's decedent and violated the standard of practice of her profession in the care and treatment of Plaintiff mother and/or Plaintiff's decedent as stated herein.

122. That  Defendants, and each of them, are liable to Plaintiff mother and/or Plaintiff's decedent herein under the doctrine of respondeat superior, either real or ostensible.

123. That Corporate Defendants Bronson Battle Creek Hospital and/ or Defendant Family Health Center of Battle Creek- Women's Health and each of them, are liable to Plaintiffs herein under the doctrine of respondeat superior, either real or ostensible.

## STANDARD OF CARE
## DR. THOMAS

124. That at all times material herein, Defendant USA's employee Dr. Thomas K. Thomas, owed duties to Plaintiff mother and/or Plaintiff's decedent pursuant to the patient-doctor relationship that existed between them and **pursuant to the standard of practice or care of his profession:**

   a. To exercise reasonable skill and diligence to timely make himself immediately available to evaluate Ms. Doerr shortly after Ms. Doerr was admitted at Bronson Hospital at 12:03 pm.

   b. To exercise reasonable skill and diligence to timely answer his cell phone immediately when called, respond to text messages immediately once received when the doctor designated himself as being "on-call," and  timely respond to multiple contact attempts from CNM Zull and/or other nurses.

   c. To exercise reasonable skill and diligence to immediately go to the hospital and evaluate Plaintiff mother, Kayla Doerr, when requested by CNM Zull and/or the nurses.

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan  48075-1221
(248) 354-2222

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221
(248) 354-2222

d.  To exercise reasonable skill and diligence that when CNM Zull and/or other nurses called the doctor regarding Kayla Doerr, that the doctor ask CNM Zull and/or other nurses, the following: their interpretation of the fetal monitoring graphs, their clinical evaluation of Kayla Doerr, their diagnosis; the results of the cervical examination performed on Kayla Doerr, and the status of the fetal heart rate.

e.  To exercise reasonable skill and diligence to instruct the nurses to immediately stop using terbutaline.

f.  To exercise reasonable skill and diligence to tell CNM Zull and/or other nurses  that  (1) he was on the way, and (2) tell her approximately how long it would take him to arrive to the hospital but in the meantime to instruct CNM Zull and/or other nurses that Kayla Doerr should be evaluated by an OB/GYN immediately, put Kayla in the operating room, have anesthesia and crew available and in the operating room, and that a C-section needed to be performed stat, and (iii) if there was another OB/GYN closer to the hospital or in house OB/GYN  available at the hospital to immediately summon the in-house OB/GYN or another available OB/GYN  to evaluate Kayla Doerr, and perform a C-section immediately.

g.  To exercise reasonable skill and diligence to timely request and demand the presence of a physician immediately to evaluate Plaintiffs immediately.

h.  To exercise reasonable skill and diligence to timely order and/or timely perform a Cesarean section.

i.  To exercise reasonable skill and diligence to timely tell CNM Zull to have another available doctor perform a stat Cesarean section.

j.  To timely request and/or order the presence of a Neonatologist and/or Pediatrician and/or expert to be present for the delivery herein to resuscitate and care for the newborn Plaintiff.

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

k.  To exercise reasonable skill and diligence in the timely treatment and care of Plaintiffs' conditions, to-wit: timely order and/or timely perform delivery herein.

l.  To timely exercise reasonable skill and diligence and order stat an anesthesiologist to give a general anesthesia so that the C-section could be done sooner and prevent further hypoxia and/or ischemia.

m.  To timely request a crew and anesthesia to come stat and ready an Operating Room stat so that a stat C-section could be timely performed.

n.  To exercise reasonable skill and diligence to timely diagnose non-reassuring fetal heart tones / patterns and/or fetal distress.

o.  To exercise reasonable skill and diligence to timely order and/or timely perform a Cesarean section so as to prevent hypoxia and/or ischemia from resulting in brain damage while the fetus remained in the uterus.

p.  To exercise reasonable skill and diligence to timely tell CNM Zull and/or other nurses of the seriousness of Plaintiffs' condition and that the performance of a C-section needed to be done stat, and could not be delayed while waiting for the doctor's arrival.

q.  To exercise reasonable skill and diligence to timely diagnose Plaintiffs' conditions, to-wit: fetal distress / non-reassuring fetal heart tones.

r.  To exercise reasonable skill and diligence to timely treat Plaintiffs' conditions.

s.  To exercise reasonable skill and diligence to follow Defendant hospital's guidelines and/or policies and/or procedures and/or protocols in the care and treatment of Plaintiff herein.

t. To timely recognize that there were non-reassuring fetal heart rates and/or patterns, and Baby Shane Bruce's health and life were in danger, and demand an immediate consultation and consideration for a stat C-section and/or by using the chain of command, ask for same.

u. To timely utilize the chain of command to ensure that the mother received timely an immediate evaluation for a stat C-section.

### STANDARD OF CARE
### DR. KRAUSS and DR. WRISTON

125. That at all times material herein, Defendant Dr. Krauss and Dr. Wriston, owed duties to Plaintiff mother and/or Plaintiff's decedent pursuant to the patient-doctor relationship that existed between them and **pursuant to the standard of practice or care of his profession:**

a. To exercise reasonable skill and diligence to timely make themselves immediately available to evaluate Ms. Doerr shortly after Ms. Doerr was admitted at Bronson Hospital at 12:03 pm.

b. To exercise reasonable skill and diligence to timely answer their cell phones immediately when called, respond to text messages immediately once received when the doctor designated himself or herself as being "on-call," and timely respond to multiple contact attempts from CNM Zull and/or other nurses.

c. To exercise reasonable skill and diligence to immediately come and evaluate Plaintiff mother, Kayla Doerr, when requested by CNM Zull and/or the nurses.

d. To exercise reasonable skill and diligence that when CNM Zull and/or other nurses called the doctor regarding Kayla Doerr, that the doctor ask CNM Zull and/or other nurses, the following: their interpretation of the fetal monitoring graphs, their clinical evaluation of Kayla Doerr, their diagnosis; the results of the cervical examination performed on Kayla Doerr, and the status of the fetal heart rate.

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

28

e. To exercise reasonable skill and diligence to instruct the nurses to immediately stop using terbutaline.

f. To exercise reasonable skill and diligence to tell CNM Zull and/or other nurses   that   (1) he was on the way, and (2) tell her approximately how long it would take him to arrive to the hospital but in the meantime to instruct CNM Zull and/or other nurses that Kayla Doerr should be evaluated by an OB/GYN immediately, put Kayla in the operating room, have anesthesia and crew available and in the operating room, and that a C-section needed to be performed stat, and (iii) if there was another OB/GYN closer to the hospital or in house OB/GYN  available at the hospital to immediately summon the in-house OB/GYN or another available OB/GYN  to evaluate Kayla Doerr, and perform a C-section immediately.

g. To exercise reasonable skill and diligence to timely request and demand the presence of a physician immediately to evaluate Plaintiffs immediately.

h. To exercise reasonable skill and diligence to timely order and/or timely perform a Cesarean section.

i. To exercise reasonable skill and diligence to timely tell CNM Zull to have another available doctor perform a stat Cesarean section.

j. To timely request and/or order the presence of a Neonatologist and/or Pediatrician and/or expert to be present for the delivery herein to resuscitate and care for the newborn Plaintiff.

k. To exercise reasonable skill and diligence in the timely treatment and care of Plaintiffs' conditions, to-wit: timely order and/or timely perform delivery herein.

l. To timely exercise reasonable skill and diligence and order stat an anesthesiologist to give general anesthesia so that the C-section could be done sooner and prevent further hypoxia and/or ischemia.

m. To timely request a crew and anesthesia to come stat and ready in the Operating Room so that a stat C-section could be timely performed.

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan  48075-1221
(248) 354-2222

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

n. To exercise reasonable skill and diligence to timely diagnose non-reassuring fetal heart tones / patterns and/or fetal distress.

o. To exercise reasonable skill and diligence to timely order and/or timely perform a Cesarean section so as to prevent hypoxia and/or ischemia from resulting in brain damage while the fetus remained in the uterus.

p. To exercise reasonable skill and diligence to timely tell CNM Zull and/or other nurses of the seriousness of Plaintiffs' condition and that the performance of a C-section needed to be done stat, and could not be delayed while waiting for the doctor's arrival.

q. To exercise reasonable skill and diligence to timely diagnose Plaintiffs' conditions, to-wit: fetal distress / non-reassuring fetal heart tones.

r. To exercise reasonable skill and diligence to timely treat Plaintiffs' conditions.

s. To exercise reasonable skill and diligence to follow Defendant hospital's guidelines and/or policies and/or procedures and/or protocols in the care and treatment of Plaintiff herein.

t. To timely recognize that there were non-reassuring fetal heart rates and/or patterns, and Baby Shane Bruce's health and life were in danger, and demand an immediate consultation and consideration for a stat C-section and/or by using the chain of command, ask for same.

u. To timely utilize the chain of command to ensure that the mother received timely an immediate evaluation for a stat C-section.

**STANDARD OF CARE**
**CNM PATRICIA ZULL**

30

126. That at all times material herein, Defendant USA's agent and/or employee, Patricia Zull CNM, owed duties to Plaintiff mother and/or Plaintiff's decedent pursuant to the patient-doctor relationship that existed between them and **pursuant to the standard of practice or care of her profession:**

   a. To exercise reasonable skill and diligence to timely include placental abruption in her differential diagnosis on admission.

   b. To exercise reasonable skill and diligence to timely recognize that Plaintiff had risk factors for placenta abruption including but not limited to: she was a smoker, had a history of hypertensive disorders, and polyhydramnios;

   c. To exercise reasonable skill and diligence to timely recognize the signs and symptoms of placental abruption including but not limited to uterine irritability/contractions 1 minute apart with a closed cervix, and/or non-relaxed uterus, and/or higher than expected pain level, and/or non-reactive fetal heart rate, and/or non-reassuring heart rate, and/or posterior placenta and/or pain in the back.

   d. To exercise reasonable skill and diligence to timely recognize that bleeding with a placental abruption can often be concealed and the danger to the baby can progress rapidly.

   e. To exercise reasonable skill and diligence to timely contact the attending physician and discuss the likelihood of an abruption.

   f. To exercise reasonable skill and diligence to timely and closely monitor Plaintiffs.

   g. To exercise reasonable skill and diligence to refrain from administering Terbutaline when Plaintiff Kayla Doerr had signs and/or symptoms of placental abruption.

   h. To exercise reasonable skill and diligence to timely notify the attending physician of the classic signs of placental abruption

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

and have him/her come immediately to the hospital at 12:35 pm.

i. To exercise reasonable skill and diligence after initially assessing Ms. Doerr at **12:35 p.m.** to timely call Dr. Thomas and/or an in house OB/GYN and/or another doctor at once and tell him/her about the patient's risk factors, pain location, pain level, non- relaxed uterus and the non-reactive fetal heart rate tracing.

j. To exercise reasonable skill and diligence to timely demand the presence of Dr. Thomas and notify him of the need for an immediate and stat C-section, due to the fact that the Plaintiff Kayla Doerr had signs and/or symptoms of placental abruption, and there was fetal distress, mandating an immediate stat/ C-section.

k. To exercise reasonable skill and diligence when unable to reach Dr. Thomas, to immediately demand the presence of the in-house OB- GYN physician and explain to him/her the need for an immediate and stat C- section because of likely placental abruption and the presence of fetal distress.

l. To exercise reasonable skill and diligence that when Dr. Krauss said that he would come to the hospital to assess Kayla Doerr, the standard of care of the nurse required that she tell Dr. Krauss to come immediately because an immediate C-section was required, even though Dr. Thomas said he was on the way.

m. To exercise reasonable skill and diligence that when talking to Dr. Thomas and Dr. Krauss, to tell them a C-section was required immediately and to asking Dr. Thomas and Dr. Krauss how long it would take them to arrive at the hospital.

n. To timely recognize the signs and symptoms of fetal distress, non-reassuring fetal heart rate and/or patterns including, but not limited to, complaints of decreased fetal movement and/or minimal fetal heart rate variability and/or absent fetal heart rate variability and/or late decelerations and/or variable decelerations of the fetal heart rate and/or the absence of accelerations of the fetal heart rate and/or tachycardia and/or fetal tachycardia, which appeared on the fetal heart monitor tracing;

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221
(248) 354-2222

32

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan  48075-1221

(248) 354-2222

o.  To timely take the appropriate action when fetal distress, non-reassuring fetal heart rate and/or patterns were identified, including immediately notifying the attending physician that he needs to come in to evaluate the mother's condition immediately and prep patient for a C-section, and ready a crew, nurses, anesthesia and physicians for an impending C-section.

p.  To timely recognize that there were non-reassuring fetal heart rates and/or patterns, and Baby Shane Bruce's health and life were in danger, and demand an immediate consultation and consideration for a stat C-section and/or by using the chain of command, ask for same.

q.  To timely utilize the chain of command to ensure that the mother received timely an immediate evaluation for a stat C-section.

r.  To timely exercise reasonable skill and diligence to timely have continuous electronic fetal monitoring of the fetal heart rate and/or contractions.

s.  To exercise reasonable skill and diligence to properly and adequately interpret the fetal monitoring graphs that showed fetal heart rate and/or contractions.

### STANDARD OF CARE
### DENISE ABER TOWNS R.N., PAULA COAKES R.N. and SARA BRISCOE R.N.

127.  That at all times material herein, Defendant Denise Aber Towns R.N., Paula Coakes R.N., and Sara Briscoe R.N. pursuant to the patient-health care professional relationship that existed between them and **pursuant to the standard of practice or care of their profession:**

a.  To exercise reasonable skill and diligence to timely include placental abruption in their differential diagnosis on admission.

b. To exercise reasonable skill and diligence to timely recognize that Plaintiff had risk factors for placenta abruption including but not limited to: she was a smoker, had a history of hypertensive disorders, and polyhydramnios;

c. To exercise reasonable skill and diligence to timely recognize the signs and symptoms of placental abruption including but not limited to uterine irritability/contractions 1 minute apart with a closed cervix, and/or non-relaxed uterus, and/or higher than expected pain level, and/or non-reactive fetal heart rate, and/or non-reassuring heart rate, and/or posterior placenta and/or pain in the back.

d. To exercise reasonable skill and diligence to timely recognize that bleeding with a placental abruption can often be concealed and the danger to the baby can progress rapidly.

e. To exercise reasonable skill and diligence to timely contact the attending physician and discuss the likelihood of an abruption.

f. To exercise reasonable skill and diligence to timely and closely monitor Plaintiffs.

g. To exercise reasonable skill and diligence to refrain from administering Terbutaline when Plaintiff Kayla Doerr had signs and/or symptoms of placental abruption.

h. To exercise reasonable skill and diligence to timely notify the attending physician of the classic signs of placental abruption and have him/her come immediately to the hospital at 12:35 pm.

i. To exercise reasonable skill and diligence after initially assessing Ms. Doerr at **12:35 p.m.** to timely call Dr. Thomas and/or an in house OB/GYN and/or another doctor at once and tell him/her about the patient's risk factors, pain location, pain level, non- relaxed uterus and the non-reactive fetal heart rate tracing.

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

34

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

j.  To exercise reasonable skill and diligence to timely demand the presence of Dr. Thomas and notify him of the need for an immediate and stat C-section, due to the fact that the Plaintiff Kayla Doerr had signs and/or symptoms of placental abruption, and there was fetal distress, mandating an immediate stat/ C-section.

k.  To exercise reasonable skill and diligence when unable to reach Dr. Thomas, to immediately demand the presence of the in-house OB- GYN physician and explain to him/her the need for an immediate and stat C- section because of likely placental abruption and the presence of fetal distress.

l.  To exercise reasonable skill and diligence that when Dr. Krauss said that he would come to the hospital to assess Kayla Doerr, the standard of care of the nurse required that she tell Dr. Krauss to come immediately because an immediate C-section was required, even though Dr. Thomas said he was on the way.

m.  To exercise reasonable skill and diligence that when talking to Dr. Thomas and Dr. Krauss, to tell them a C-section was required immediately and to asking Dr. Thomas and Dr. Krauss how long it would take them to arrive at the hospital.

n.  To timely recognize the signs and symptoms of fetal distress, non-reassuring fetal heart rate and/or patterns including, but not limited to, complaints of decreased fetal movement and/or minimal fetal heart rate variability and/or absent fetal heart rate variability and/or late decelerations and/or variable decelerations of the fetal heart rate and/or the absence of accelerations of the fetal heart rate and/or tachycardia and/or fetal tachycardia, which appeared on the fetal heart monitor tracing;

o.  To timely take the appropriate action when fetal distress, non-reassuring fetal heart rate and/or patterns were identified, including immediately notifying the attending physician that he needs to come in to evaluate the mother's condition immediately and prep patient for a C-section, and ready a crew, nurses, anesthesia and physicians for an impending C-section.

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

p.  To timely recognize that there were non-reassuring fetal heart rates and/or patterns, and Baby Shane Bruce's health and life were in danger, and demand an immediate consultation and consideration for a stat C-section and/or by using the chain of command, ask for same.

q.  To timely utilize the chain of command to ensure that the mother received timely an immediate evaluation for a stat C-section.

r.  To timely exercise reasonable skill and diligence to timely have continuous electronic fetal monitoring of the fetal heart rate and/or contractions.

s.  To exercise reasonable skill and diligence to properly and adequately interpret the fetal monitoring graphs that showed fetal heart rate and/or contractions.

## BREACH BY DOCTOR

128.  That **Dr. Thomas K. Thomas**, **breached the aforementioned duties in at least one and possibly more of the following particulars, so far as it is presently known, by failing:**

a.  To exercise reasonable skill and diligence to timely make himself immediately available to evaluate Ms. Doerr shortly after Ms. Doerr was admitted at Bronson Hospital at 12:03 pm.

b.  To exercise reasonable skill and diligence to timely answer his cell phone immediately when called, respond to text messages immediately once received when the doctor designated himself as being "on-call," and  timely respond to multiple contact attempts from CNM Zull and/or other nurses.

c.  To exercise reasonable skill and diligence to immediately go to the hospital and evaluate Plaintiff mother, Kayla Doerr, when requested by CNM Zull and/or the nurses.

d.  To exercise reasonable skill and diligence that when CNM Zull and/or other nurses called the doctor regarding Kayla Doerr, that the

36

doctor ask CNM Zull and/or other nurses, the following: their interpretation of the fetal monitoring graphs, their clinical evaluation of Kayla Doerr, their diagnosis; the results of the cervical examination performed on Kayla Doerr, and the status of the fetal heart rate.

e.  To exercise reasonable skill and diligence to instruct the nurses to immediately stop using terbutaline.

f.  To exercise reasonable skill and diligence to tell CNM Zull and/or other nurses  that  (1) he was on the way, and (2) tell her approximately how long it would take him to arrive to the hospital but in the meantime to instruct CNM Zull and/or other nurses that Kayla Doerr should be evaluated by an OB/GYN immediately, put Kayla in the operating room, have anesthesia and crew available and in the operating room, and that a C-section needed to be performed stat, and (iii) if there was another OB/GYN closer to the hospital or in house OB/GYN  available at the hospital to immediately summon the in-house OB/GYN or another available OB/GYN  to evaluate Kayla Doerr, and perform a C-section immediately.

g.  To exercise reasonable skill and diligence to timely request and demand the presence of a physician immediately to evaluate Plaintiffs immediately.

h.  To exercise reasonable skill and diligence to timely order and/or timely perform a Cesarean section.

i.  To exercise reasonable skill and diligence to timely tell CNM Zull to have another available doctor perform a stat Cesarean section.

j.  To timely request and/or order the presence of a Neonatologist and/or Pediatrician and/or expert to be present for the delivery herein to resuscitate and care for the newborn Plaintiff.

k.  To exercise reasonable skill and diligence in the timely treatment and care of Plaintiffs' conditions, to-wit: timely order and/or timely perform delivery herein.

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan  48075-1221
(248) 354-2222

l.  To timely exercise reasonable skill and diligence and order stat an anesthesiologist to give a general anesthesia so that the C-section could be done sooner and prevent further hypoxia and/or ischemia.

m.  To timely request a crew and anesthesia to come stat and ready an Operating Room stat so that a stat C-section could be timely performed.

n.  To exercise reasonable skill and diligence to timely diagnose non-reassuring fetal heart tones / patterns and/or fetal distress.

o.  To exercise reasonable skill and diligence to timely order and/or timely perform a Cesarean section so as to prevent hypoxia and/or ischemia from resulting in brain damage while the fetus remained in the uterus.

p.  To exercise reasonable skill and diligence to timely tell CNM Zull and/or other nurses of the seriousness of Plaintiffs' condition and that the performance of a C-section needed to be done stat, and could not be delayed while waiting for the doctor's arrival.

q.  To exercise reasonable skill and diligence to timely diagnose Plaintiffs' conditions, to-wit: fetal distress / non-reassuring fetal heart tones.

r.  To exercise reasonable skill and diligence to timely treat Plaintiffs' conditions.

s.  To exercise reasonable skill and diligence to follow Defendant hospital's guidelines and/or policies and/or procedures and/or protocols in the care and treatment of Plaintiff herein.

t.  To timely recognize that there were non-reassuring fetal heart rates and/or patterns, and Baby Shane Bruce's health and life were in danger, and demand an immediate consultation and consideration for a stat C-section and/or by using the chain of command, ask for same.

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221
(248) 354-2222

u. To timely utilize the chain of command to ensure that the mother received timely an immediate evaluation for a stat C-section.

## BREACH BY DOCTOR

129. That Defendants Dr. Krauss and Dr. Wriston, breached the aforementioned duties in at least one and possibly more of the following particulars, so far as it is presently known, by failing:

    a. To exercise reasonable skill and diligence to timely make themselves immediately available to evaluate Ms. Doerr shortly after Ms. Doerr was admitted at Bronson Hospital at 12:03 pm.

    b. To exercise reasonable skill and diligence to timely answer their cell phones immediately when called, respond to text messages immediately once received when the doctor designated himself or herself as being "on-call," and timely respond to multiple contact attempts from CNM Zull and/or other nurses.

    c. To exercise reasonable skill and diligence to immediately come and evaluate Plaintiff mother, Kayla Doerr, when requested by CNM Zull and/or the nurses.

    d. To exercise reasonable skill and diligence that when CNM Zull and/or other nurses called the doctor regarding Kayla Doerr, that the doctor ask CNM Zull and/or other nurses, the following: their interpretation of the fetal monitoring graphs, their clinical evaluation of Kayla Doerr, their diagnosis; the results of the cervical examination performed on Kayla Doerr, and the status of the fetal heart rate.

    e. To exercise reasonable skill and diligence to instruct the nurses to immediately stop using terbutaline.

    f. To exercise reasonable skill and diligence to tell CNM Zull and/or other nurses that (1) he was on the way, and (2) tell her approximately how long it would take him to arrive to the hospital but in the meantime to instruct CNM Zull and/or other nurses that Kayla Doerr should be evaluated by an OB/GYN immediately, put

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

Kayla in the operating room, have anesthesia and crew available and in the operating room, and that a C-section needed to be performed stat, and (iii) if there was another OB/GYN closer to the hospital or in house OB/GYN available at the hospital to immediately summon the in-house OB/GYN or another available OB/GYN to evaluate Kayla Doerr, and perform a C-section immediately.

g. To exercise reasonable skill and diligence to timely request and demand the presence of a physician immediately to evaluate Plaintiffs immediately.

h. To exercise reasonable skill and diligence to timely order and/or timely perform a Cesarean section.

i. To exercise reasonable skill and diligence to timely tell CNM Zull to have another available doctor perform a stat Cesarean section.

j. To timely request and/or order the presence of a Neonatologist and/or Pediatrician and/or expert to be present for the delivery herein to resuscitate and care for the newborn Plaintiff.

k. To exercise reasonable skill and diligence in the timely treatment and care of Plaintiffs' conditions, to-wit: timely order and/or timely perform delivery herein.

l. To timely exercise reasonable skill and diligence and order stat an anesthesiologist to give general anesthesia so that the C-section could be done sooner and prevent further hypoxia and/or ischemia.

m. To timely request a crew and anesthesia to come stat and ready in the Operating Room so that a stat C-section could be timely performed.

n. To exercise reasonable skill and diligence to timely diagnose non-reassuring fetal heart tones / patterns and/or fetal distress.

o. To exercise reasonable skill and diligence to timely order and/or timely perform a Cesarean section so as to prevent hypoxia and/or ischemia from resulting in brain damage while the fetus remained in the uterus.

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

p. To exercise reasonable skill and diligence to timely tell CNM Zull and/or other nurses of the seriousness of Plaintiffs' condition and that the performance of a C-section needed to be done stat, and could not be delayed while waiting for the doctor's arrival.

q. To exercise reasonable skill and diligence to timely diagnose Plaintiffs' conditions, to-wit: fetal distress / non-reassuring fetal heart tones.

r. To exercise reasonable skill and diligence to timely treat Plaintiffs' conditions.

s. To exercise reasonable skill and diligence to follow Defendant hospital's guidelines and/or policies and/or procedures and/or protocols in the care and treatment of Plaintiff herein.

t. To timely recognize that there were non-reassuring fetal heart rates and/or patterns, and Baby Shane Bruce's health and life were in danger, and demand an immediate consultation and consideration for a stat C-section and/or by using the chain of command, ask for same.

u. To timely utilize the chain of command to ensure that the mother received timely an immediate evaluation for a stat C-section.

## BREACH BY NURSE MIDWIFE

130. That Defendant USA's employee and/or agent, Patricia Zull CNM breached the aforementioned duties in at least one and possibly more of the following particulars, so far as it is presently known, by failing:

a. To exercise reasonable skill and diligence to timely include placental abruption in her differential diagnosis on admission.

b. To exercise reasonable skill and diligence to timely recognize that Plaintiff had risk factors for placenta abruption including but not limited to: she was a smoker, had a history of hypertensive disorders, and polyhydramnios;

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221
(248) 354-2222

c. To exercise reasonable skill and diligence to timely recognize the signs and symptoms of placental abruption including but not limited to uterine irritability/contractions 1 minute apart with a closed cervix, and/or non-relaxed uterus, and/or higher than expected pain level, and/or non-reactive fetal heart rate, and/or non-reassuring heart rate, and/or posterior placenta and/or pain in the back.

d. To exercise reasonable skill and diligence to timely recognize that bleeding with a placental abruption can often be concealed and the danger to the baby can progress rapidly.

e. To exercise reasonable skill and diligence to timely contact the attending physician and discuss the likelihood of an abruption.

f. To exercise reasonable skill and diligence to timely and closely monitor Plaintiffs.

g. To exercise reasonable skill and diligence to refrain from administering Terbutaline when Plaintiff Kayla Doerr had signs and/or symptoms of placental abruption.

h. To exercise reasonable skill and diligence to timely notify the attending physician of the classic signs of placental abruption and have him/her come immediately to the hospital at 12:35 pm.

i. To exercise reasonable skill and diligence after initially assessing Ms. Doerr at **12:35 p.m.** to timely call Dr. Thomas and/or an in house OB/GYN and/or another doctor at once and tell him/her about the patient's risk factors, pain location, pain level, non- relaxed uterus and the non-reactive fetal heart rate tracing.

j. To exercise reasonable skill and diligence to timely demand the presence of Dr. Thomas and notify him of the need for an immediate and stat C-section, due to the fact that the Plaintiff Kayla Doerr had

42

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

signs and/or symptoms of placental abruption, and there was  fetal distress, mandating an immediate stat/ C-section.

k. To exercise reasonable skill and diligence when unable to reach Dr.  Thomas, to immediately demand the presence of the in-house OB- GYN physician and explain to him/her the need for an immediate and stat C- section because of likely placental abruption and the presence of fetal distress.

l. To exercise reasonable skill and diligence that when Dr. Krauss said that he would come to the hospital to assess Kayla Doerr, the standard of care of the nurse required that she tell Dr. Krauss  to come immediately  because an immediate C-section was required, even though Dr. Thomas said he was on the way.

m. To exercise reasonable skill and diligence that when talking to Dr. Thomas and Dr. Krauss, to tell them a C-section was required immediately and to asking Dr. Thomas and Dr. Krauss how long it would take them to arrive at the hospital.

n. To timely recognize the signs and symptoms of fetal distress, non-reassuring fetal heart rate and/or patterns including, but not limited to, complaints of decreased fetal movement and/or minimal fetal heart rate variability and/or absent fetal heart rate variability and/or late decelerations and/or variable decelerations of the fetal heart rate and/or the absence of accelerations of the fetal heart rate and/or tachycardia and/or fetal tachycardia, which appeared on the fetal heart monitor tracing;

o. To timely take the appropriate action when fetal distress, non-reassuring fetal heart rate and/or patterns were identified, including immediately notifying the attending physician that he needs to come in to evaluate the mother's condition immediately and prep patient for a C-section, and ready a crew, nurses, anesthesia and physicians for an impending C-section.

p. To timely recognize that there were non-reassuring fetal heart rates and/or patterns, and Baby Shane Bruce's health and life were in

43

danger, and demand an immediate consultation and consideration for a stat C-section and/or by using the chain of command, ask for same.

q. To timely utilize the chain of command to ensure that the mother received timely an immediate evaluation for a stat C-section.

r. To timely exercise reasonable skill and diligence to timely have continuous electronic fetal monitoring of the fetal heart rate and/or contractions.

s. To exercise reasonable skill and diligence to properly and adequately interpret the fetal monitoring graphs that showed fetal heart rate and/or contractions.

## BREACH BY NURSE

131. That Defendants Denise Aber Towns R.N., Paula Coakes R.N., and Sara Briscoe R.N. breached the aforementioned duties in at least one and possibly more of the following particulars, so far as it is presently known, by failing:

a. To exercise reasonable skill and diligence to timely include placental abruption in their differential diagnosis on admission.

b. To exercise reasonable skill and diligence to timely recognize that Plaintiff had risk factors for placenta abruption including but not limited to: she was a smoker, had a history of hypertensive disorders, and polyhydramnios;

c. To exercise reasonable skill and diligence to timely recognize the signs and symptoms of placental abruption including but not limited to uterine irritability/contractions 1 minute apart with a closed cervix, and/or non-relaxed uterus, and/or higher than expected pain level, and/or non-reactive fetal heart rate, and/or non-reassuring heart rate, and/or posterior placenta and/or pain in the back.

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

d.  To exercise reasonable skill and diligence to timely recognize that bleeding with a placental abruption can often be concealed and the danger to the baby can progress rapidly.

e.  To exercise reasonable skill and diligence to timely contact the attending physician and discuss the likelihood of an abruption.

f.  To exercise reasonable skill and diligence to timely and closely monitor Plaintiffs.

g.  To exercise reasonable skill and diligence to refrain from administering Terbutaline when Plaintiff Kayla Doerr had signs and/or symptoms of placental abruption.

h.  To exercise reasonable skill and diligence to timely notify the attending physician of the classic signs of placental abruption and have him/her come immediately to the hospital at 12:35 pm.

i.  To exercise reasonable skill and diligence after initially assessing Ms. Doerr at **12:35 p.m.** to timely call Dr. Thomas and/or an in house OB/GYN and/or another doctor at once and tell him/her about the patient's risk factors, pain location, pain level, non- relaxed uterus and the non-reactive fetal heart rate tracing.

j.  To exercise reasonable skill and diligence to timely demand the presence of Dr. Thomas and notify him of the need for an immediate and stat C-section, due to the fact that the Plaintiff Kayla Doerr  had signs and/or symptoms of placental abruption, and there was  fetal distress, mandating an immediate stat/ C-section.

k.  To exercise reasonable skill and diligence when unable to reach Dr.  Thomas, to immediately demand the presence of the in-house OB- GYN physician and explain to him/her the need for an immediate and stat C- section because of likely placental abruption and the presence of fetal distress.

l.  To exercise reasonable skill and diligence that when Dr. Krauss said that he would come to the hospital to assess Kayla Doerr, the

standard of care of the nurse required that she tell Dr. Krauss to come immediately because an immediate C-section was required, even though Dr. Thomas said he was on the way.

m.  To exercise reasonable skill and diligence that when talking to Dr. Thomas and Dr. Krauss, to tell them a C-section was required immediately and to asking Dr. Thomas and Dr. Krauss how long it would take them to arrive at the hospital.

n.  To timely recognize the signs and symptoms of fetal distress, non-reassuring fetal heart rate and/or patterns including, but not limited to, complaints of decreased fetal movement and/or minimal fetal heart rate variability and/or absent fetal heart rate variability and/or late decelerations and/or variable decelerations of the fetal heart rate and/or the absence of accelerations of the fetal heart rate and/or tachycardia and/or fetal tachycardia, which appeared on the fetal heart monitor tracing;

o.  To timely take the appropriate action when fetal distress, non-reassuring fetal heart rate and/or patterns were identified, including immediately notifying the attending physician that he needs to come in to evaluate the mother's condition immediately and prep patient for a C-section, and ready a crew, nurses, anesthesia and physicians for an impending C-section.

p.  To timely recognize that there were non-reassuring fetal heart rates and/or patterns, and Baby Shane Bruce's health and life were in danger, and demand an immediate consultation and consideration for a stat C-section and/or by using the chain of command, ask for same.

q.  To timely utilize the chain of command to ensure that the mother received timely an immediate evaluation for a stat C-section.

r.  To timely exercise reasonable skill and diligence to timely have continuous electronic fetal monitoring of the fetal heart rate and/or contractions.

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

46

s.  To exercise reasonable skill and diligence to properly and adequately interpret the fetal monitoring graphs that showed fetal heart rate and/or contractions.

132.  Defendant United States of America is liable herein by virtue of its independent negligence and/or under the doctrine of RESPONDEAT SUPERIOR for the acts and/or omissions of its agents, servants, and/or employees, and other persons who rendered care, treatment or medical services to Plaintiffs under some concession arrangement because of their apparent authority to be the agents, servants and/or employees of Defendant clinic.

133.  Defendant United States of America is liable herein for negligence / malpractice under the doctrine of RESPONDEAT SUPERIOR for the acts and/or omissions of its agents, servants, and/or employees, and other persons who rendered care, treatment or medical services to Plaintiffs under some concession arrangement because of their apparent authority to be the agents, servants and/or employees of Defendant.

134.  That at all times material herein, the injuries and/or damages suffered by the Plaintiffs were more probably than not proximately caused by the negligence/malpractice of the Defendant, United States of America, its agents, servants and/or employees, either real or ostensible.

135.  Corporate Defendant Bronson Battle Creek Hospital, is liable herein for negligence / malpractice under the doctrine of RESPONDEAT SUPERIOR for the acts and/or omissions of Dr. Krauss, Dr. Wriston, Paula Coakes, Denise Aber-Towns R.N. and Sara Briscoe R.N., its agents, servants, and/or employees, and other persons who rendered care, treatment or medical services to Plaintiff, Kayla Doerr and Plaintiff's decedent, S.B.

136.  That Defendants and each of them, their agents, servants and/or employees, changed and/or altered the records herein in violation of the standard of care and/or Michigan statutes.

137.  That Defendant USA and Corporate Defendant, Bronson Battle Creek Hospital, were guilty of independent negligence to Plaintiffs by carelessly and/or negligently permitting Dr. Thomas, Dr. Krauss and Dr. Wriston  and

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

nurses, and other personnel, to be employed by them, when these Defendants knew or in the exercise of reasonable care should have known, that said doctors were unfit to render medical care and attention to Plaintiff and Plaintiff's decedent by reason of their inexperience and/or habitual negligent conduct.

# VI.

## PLAINTIFFS' DAMAGES

138. That Kayla Doerr has been duly appointed by the Probate Court for the County of Calhoun, Michigan, Personal Representative of the Estate of S.B., Deceased, who departed this life on 12/14/2014, and said personal representative is a resident of the City of Battle Creek, County of Kalamazoo, Michigan. That said deceased was a resident of the City of Battle Creek, County of Kalamazoo, Michigan at the time of his death. That Kayla Doerr is acting under and by virtue of Letters of Authority issued by the Probate Court. **(Exhibit A)**

139. That S.B., Deceased, left surviving as his heirs at law and next of kin, the following persons with the following relationships: Kayla Doerr (mother), Skylar Thomas A Bruce (father), Shawn Thomas A. Bruce, minor (brother), Andrea Marie Tidwell, minor(half-sister), Chloe Amerie Hayes, minor (half-sister), Kristy Romick (maternal grandmother), Larry Doerr Jr. (maternal grandfather), Paul Bruce (paternal grandfather), and Holly Mackinder (paternal grandmother)

140. That at all times material herein, the injuries and/or damages suffered by the Plaintiff's decedent were more probably than not proximately caused by the negligence/malpractice of the Defendants, their agents, servants and/or employees, either real or ostensible.

141. That Plaintiff's decedent S.B. sustained personal injuries as a direct and proximate result of Defendant's negligence and malpractice as herein alleged.

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221
(248) 354-2222

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

142.   That as a direct and proximate result of the malpractice and negligence of the Defendants their agents, servants and/or employees, either real or ostensible, as alleged herein, Plaintiff's decedent, S.B., sustained personal injuries, conscious pain and suffering and death.

143.   That as a direct and proximate result of the malpractice and negligence of the Defendants as herein alleged, Plaintiff's decedent, S.B. suffered loss of enjoyment of life, hedonic damages. (See Nice v Chesapeake & O.R. Co. (1964, W.D. Mich) 305 F Supp 1167 (applying Michigan law); Dyer v U.S., (1982, W.D. Mich) 551 F Supp 1266 (applying Michigan law).

144.   That as a direct and proximate result of the negligence and malpractice as herein alleged of Defendants, their agents, servants and/or employees, either real or ostensible, as aforesaid, the injured Plaintiff's decedent S.B.:

　　　　A.   sustained severe and permanent bodily injuries which were painful, disabling and necessitated medical care; and/or

　　　　B.   suffered shock, mental anguish, fright and emotional damage; and/or

　　　　C.   sustained possible aggravation of pre-existing conditions and/or reactivation of dormant conditions; and/or

　　　　D.   hampered said Plaintiff's decedent in the enjoyment of the normal pursuit of life; and/or

　　　　E.   any other damages which are applicable and which are recoverable pursuant to statute, case law and Michigan court rules.

145.   That at all times material herein, Plaintiff Kayla Doerr was not at fault and/or was not negligent.

146.   That at all times material herein, as a direct and proximate result of the negligence of Defendant, and its agents, servants and/or employees, either real or ostensible:

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan 48075-1221

(248) 354-2222

    a. Plaintiff S.B., prior to his death, had permanently impaired cognitive capacity rendering him incapable of making independent, responsible life decisions and permanently incapable of independently performing the activities of normal daily living.

147. That the within cause is brought on behalf of said Estate and the heirs and next of kin of said decedent to recover for the conscious pain and suffering suffered by Plaintiff's decedent prior to his death, the loss of love, affection, companionship, services, instruction, guidance, advice, gifts, inheritance, support, and income services sustained by Plaintiff's decedent's heirs at law and next of kin as a result of the death of Plaintiff's decedent, S.B.; the funeral and burial expenses and any and all other amounts recoverable under the statutes and case law of the State of Michigan by the heirs, next of kin, and/or Estate of said deceased.

148. That the within cause of action is brought on behalf of said estate and the heirs and next of kin of said decedent to recover for all damages, both past and future, permitted by law, including, but not limited to, conscious pain and suffering suffered by Plaintiff's decedent prior to his death, loss of love, affection, companionship, society, loss of services, loss of gifts and valuable gratuities, loss of parental training and guidance, mental suffering and sorrow, hedonic damages, any other damages sustained by Plaintiff's decedent's heirs at law and next of kin as a result of the death of Plaintiff's decedent, S.B., and any and all other amounts recoverable under the statues and the case law of the State of Michigan by the heirs, next of kin and/or the Estate of said deceased.

149. That the within cause is brought on behalf of said estate and the heirs and next of kin of said decedent to recover for any and all damages, both past and future, pursuant to law, including, but not limited to one or more of the following: medical care, treatment, expenses, other related expenses, funeral and burial expenses, lost wages, loss of ability to work, future loss of income, impaired earning capacity, loss of expected inheritance, loss of society and companionship, loss of services, instruction, guidance, care, loss of gifts and valuable gratuities, inheritance, loss of economic opportunity, loss of financial support, hedonic damages, and any and all

other amounts recoverable under the statues and the case law of the State of Michigan by the heirs, next of kin and/or the Estate of said deceased.

WHEREFORE, Plaintiffs respectfully request that the Court grant judgment against Defendants, jointly and severally, in whatever amount Plaintiffs are found to be entitled to compensatory damages; and for penalties, and Plaintiffs' actual attorney fees, plus interests and costs.

Respectfully Submitted,


s/*Ardiana Culaj*
Attorney for Plaintiffs
The Thurswell Law Firm
1000 Town Center, Ste. 500
Southfield, MI  48075
(248) 354-2222
aculaj@thurswell.com
P71553

Dated: 5/16/2017

THE THURSWELL LAW FIRM, P.L.L.C.
Attorneys at Law
1000 TOWN CENTER
SUITE 500
Southfield, Michigan  48075-1221
(248) 354-2222